Lewis M. Smith's Administrator *v.* Willard M. Smith.

January Term, 1905.

Present: Rowell, C. J., Tyler, Munson, Watson, Haselton, and Powers, JJ.

Opinion filed, July 27, 1905.

*Evidence—Declarations — Introductory Statement — Conclusiveness of Master's Findings—Bill in Equity—Scope of Prayer—Decree "According to The Prayer."*

In a suit in equity by an administrator to compel the defendant to convey to the orator certain real estate which, the orator

claimed, was conveyed to the defendant in fraud of the decedent, the orator introduced evidence that defendant requested the grantor to convey the title to him in order to avoid decedent's liability on a certain bond. *Held,* that the orator did not thereby place himself in the position of one seeking relief from his own fraud.

It is not error to allow a witness to state what she told defendant that decedent had said; it appearing that such statement began a conversation in which defendant made an admissible declaration, for the accurate presentation and correct understanding of which, such precedent statement is necessary.

The findings of a master will not be disturbed, when there is evidence tending strongly to support them.

In a bill in equity charging that the defendant has wrongfully received the rents of certain property, the prayer, that an accounting thereof be had, and that the defendant be decreed to pay over the sum found in his hands, asks merely for the net income, so that a decree "according to the prayer" does not deprive the defendant of credit for proper expenditures.

APPEAL IN CHANCERY. Heard on master's report and exceptions thereto, at the October Term, 1904, Essex County, *Start,* Chancellor. Decree for the orator "according to the prayer of the bill." The defendant appealed.

Lewis M. Smith died October 4, 1902. On September 12, 1902, he went from his home in Groteton, N., H., to the village of Island Pond, Vt., to visit his brother, the defendant, and remained there till September 18, 1902, when he returned to Groteton. While at defendant's, and on September 12, 1902, Lewis delivered to defendant certain bank checks, amounting to $1,233, upon which defendant procured the cash. On September 18, 1902, defendant purchased of one Willoughby certain premises in Brighton, Vt., described in the bill, and took the deed in his own name, and paid $1,000 to said Willoughby, from said fund. The defendant claimed, and his evidence tended to show, that Lewis made

him a present of this $1,233, and directed him to purchase said Willoughby's place with $1,000 thereof, to take the deed in his own name, and to keep the remainder of said fund.

The master reported that Willoughby directed a scrivener to make the deed to Lewis M. Smith, and that "thereupon Willard M. Smith requested that the deed should be made in his name, saying that his brother was in some trouble in regard to being bondsman for some one who had sold liquor, and his property might be taken."

In his bill the orator prayed: "That said premises may be decreed to him, and that the defendant be decreed to execute and deliver to your orator a deed, in due form of law, conveying the title so held by the defendant as aforesaid to your orator; that the defendant be decreed to pay to your orator the balance of the money so received and held by him as aforesaid; that an accounting be had of the money so received by the defendant as rent for the use of said premises as aforesaid, and that upon said accounting the defendant be decreed to pay to your orator the sum or sums of money found in his hands;" for a temporary injunction prohibiting the defendant from selling or incumbering the property, or collecting the rents therefrom; and for general relief.

*Harland B. Howe* for the orator.

*Dale & Amey,* and *H. W. Blake* for the defendant.

MUNSON, J. Lewis M. Smith, the orator's decedent, and the defendant were brothers. The defendant conducted the negotiations for the property in question, paid for it out of funds drawn from the bank on assignments received from Lewis, and had himself named as grantee in the deed. The

bill alleges that the defendant was to draw only the sum needed to pay for the place, and that the drawing of the excess and the taking of the deed in defendant's name were fraudulently done. The defendant claims that Lewis transferred the entire fund to him as a gift, with an understanding that the amount required was to be used for the purchase of this place. The findings of the master sustain the orator's contention.

The defendant claims that by the introduction of evidence which indicated that Lewis had the deed taken in defendant's name to avoid liability upon a certain bond, and by the statements of counsel made in connection with it, the orator has put himself in the position of one seeking relief from his own fraud, and that this entitles the defendant to a decree, on the ground that no trust could result to Lewis from a transaction of that character. But it seems clear from the defendant's brief that the testimony referred to as showing this fraud related only to what the defendant said or suggested in regard to his brother's purpose when he requested that the deed be made out to him. If however, it be true that there was testimony tending to show that Lewis entertained the purpose claimed, the master has failed to find the fact established, but on the contrary has found that Lewis did not direct that the title be taken in defendant's name. This leaves no basis for defendant's argument, and renders it unnecessary to inquire as to the soundness or applicability of his legal propositions.

There was evidence tending to show that shortly before the deed was executed the defendant paid Willoughby, the owner of the property, twenty-five dollars to bind the bargain. Mrs. Bassett, a witness for the orator, testified that Lewis requested her to see Willoughby, and that she told de-

fendant what Lewis wanted her to do. She was then asked, subject to defendant's exception, what she told defendant that Lewis wanted her to do about the Willoughby place. Her first answer was not responsive, but upon the question being explained by the master, she replied as follows: "I told him that his brother Lewis wanted me to go down and bind the bargain—he said he had twenty-five dollars. Willard Smith says 'he didn't have—he only had eight dollars, and I loaned him the rest.'" The defendant insists that this evidence of what the witness told him the decedent had said was hearsay, and the indirect introduction of an inadmissible declaration. But the answer shows that the statement complained of was part of a conversation in which the defendant made an admissible declaration, for the accurate presentation and correct understanding of which the preceding remark was necessary. The admission of such a statement in a conversation thus closely connected was not error.

It was not suggested by any of the defendant's exceptions or motions, and it is not now claimed, that the master's conclusions, as stated in his report, do not meet the requirement of the law. The defendant excepted to the report as originally filed on the ground that certain evidence was improperly received, and the report was thereupon recommitted to obtain such findings as might be made without considering some of the testimony covered by the exceptions. Upon this recommitment, the defendant requested the master to state "the facts and evidence" upon which his conclusions were based. The master declined to do this, on the ground that it was not covered by the order of recommitment; and the defendant excepted to the supplemental report, and moved that it be set aside, because of this refusal, and also on the ground that the findings were "against the evidence." But

the master stated in his supplemental report that he had filed with the clerk the transcript of the reporter's minutes containing all the oral evidence on which the report was based, and all the exhibits in the case. The defendant treats this as a reference making the transcript a part of the report, and presents an elaborate review of the testimony in support of his claim that the findings are "against the evidence." It is not necessary to consider the exact force of this expression, or the effect of the master's statement regarding the transcript, or whether the master could properly have taken further action on the defendant's request. It appears from the matters stated in the report that there was evidence before the master which tended strongly to support his conclusions; and this being so, the result must depend upon the master's estimate of the evidence as a whole, and any review of it by the Court would be useless.

The bill charges the defendant with receiving the rents of the property in question, and prays that an account thereof be taken, and that the orator be decreed to pay over the sum found in his hands. The master reports that defendant collected and held the sum of $73.50; that he paid for necessary repairs while this amount was accruing the sum of six dollars, and that all subsequent rents were collected by the orator. The court entered a decree "according to the prayer of the bill." The defendant contends that a decree according to the prayer takes no account of the expenditures and is therefore erroneous. We construe the prayer to ask for the net income of the property, and upon this construction the decree will cover no more than the orator is unquestionably entitled to. The master's submission to the court of the effect that should be given to defendant's letter refusing to pay over further

rents, presented no question that was not sufficiently disposed of by the decree as made.

*Decree affirmed and cause remanded.*