## ANNA E. DUBOIS *v.* BARNEY ROBY.

February Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed May 27, 1911.

*Assault and Battery—Evidence—Connected Circumstances—Acts of Others—Admissions—Exemplary Damages—Mitigation— Criminal Conviction—Order of Proof—Offers of Evidence— Inadmissible in Part—Effect—Too Broad—Cross-examination—Scope—Pleading—Duplicity—Waiver.*

In an action of trespass for assaulting plaintiff while on the porch of her house, evidence that, when plaintiff's small brothers came to her assistance at her call, defendant chased them around the house and threw a wooden spout at them was admissible as a part of the connected assault, and also as bearing on the question of exemplary damages.

In an action of trespass for assaulting plaintiff while in her house, testimony that a third person, who the evidence tended to show was acting jointly with defendant, threw missiles into the house was admissible, for, in the circumstances, such third person's acts were in law the acts of defendant.

The evidence tending to show that defendant, as a part of the assault, threw at plaintiff's house missiles that came from a scrap heap in defendant's yard, testimony that some months after the assault defendant rode by plaintiff's house and shouted to plaintiff and her husband, "there is more iron to throw at the house," was admissible.

In an action of trespass for assault and battery, where the evidence tended to show that immediately after defendant had struck plaintiff a party of men, including defendant, by concerted action threw missiles at the house in which plaintiff then was, evidence showing the condition of the house as a result of the impact of the missiles, and a photograph thereof, was admissible.

In trespass against one defendant for, by concerted action with three other men, assaulting plaintiff in her house, where the evidence tended to show that, immediately after the assault, defendant and the three others threw missiles at plaintiff's house and damaged it, defendant's connected offers to prove that one of the three other wrong doers had paid plaintiff $53 "for damage arising", and $25 in full settlement of all claims against those three, were properly excluded, for the "damage
30

arising" might have been for the injuries to the house, and there was
nothing to show how that would be relevant.

In an action for assault and battery, where in cross-examination of plain-
tiff defendant attempted to elicit from her that she had settled with
the other joint tortfeasors, and offered to prove that fact, it was not error
for the court to exclude the offered evidence "as the case then stood",
and "on the offer as made"; for the rule that the cross-examination of a
party need not be confined to the matter of his direct examination does
not prevent the court from reasonably controlling the order of the
evidence, and the quoted phrases of the ruling indicated that the evi-
dence would be admissible at a later stage of the trial.

In a civil action for assault and battery, evidence that defendant has paid
a designated fine in a criminal prosecution for the same assault and
battery is not admissible on the question of exemplary damages.

In an action for assault and battery, where plaintiff's husband testified in
cross-examination that he had complained to the state's attorney,
and had testified in the resulting criminal prosecution against defendant
for this same assault and battery, the court properly refused to allow
defendant further to elicit from the husband, as tending to show his
animus and prejudice, that he had caused defendant to be fined a
designated amount, the husband's connection with the criminal case
having already been shown.

In a civil action for assault and battery, defendant's offer to show, in
cross-examination of plaintiff's witness, as bearing on the animus
of the witness, and on defendant's financial condition, and to mitigate
exemplary damages, that by the efforts of the witness defendant had
been convicted and fined a designated amount in a criminal prosecution
for the same assault and battery was properly excluded, because too
broad.

In an action for assault and battery, after plaintiff had admitted in cross-
examination that she had instituted a criminal prosecution against
defendant for the same assault and battery, it was discretionary with
the court to prohibit further cross-examination on that subject.

In a civil action for assault and battery, defendant's offer to prove, as
bearing on the question of exemplary damages by showing his financial
resources, that he had been fined in a criminal prosecution for the same
assault and battery, was properly excluded where the offer did not
designate the amount ·of the fine.

Where an offer of evidence discloses that the evidence is wanted in part
for immaterial and irrelevant purposes, the whole offer is properly
excluded.

In an action for assault and battery, where defendant in putting in his case
testified as to his lack of means, and that he had rendered financial
aid to his sisters, it was proper to elicit from him in cross-examination
that his sisters were six in number and all married and of full age.

Duplicity in a declaration can be taken advantage of only by special demurrer.

TRESPASS for assault and battery. Plea, the general issue. Trial by jury at the April Term, 1910, Essex County, Waterman, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion sufficiently states the case. See *State* v. *Roby*, 83 Vt. 120.

*Harry B. Amey* for the defendant.

*George L. Hunt* for the plaintiff.

HASELTON, J. This is an action of trespass in several counts for assault and battery. On trial, Anna Dubois was the sole plaintiff, Arthur Dubois, who was her husband, having been permitted to become non-suit without costs. Trial by jury was had and verdict and judgment were for the plaintiff. The defendant excepted.

The plaintiff's evidence tended to show that she and her family lived at the house of one Fred Contin, about forty rods from the house of one Thomas Lapoint, and that while she was so living, January 10, 1909, in the evening, the defendant and three other men came from, or near, the Lapoint house, and approached the Contin house together, that the defendant was dressed in woman's clothes, and that when near the Contin house he left his companions in the road and came to the back porch of the house where the plaintiff was and assaulted and beat her, at the same time telling her to get out of the road and addressing her by a vile name; that thereupon the plaintiff called to her mother, who was Mrs. Contin, and to Willie and Meddie Contin, small brothers of the plaintiff, who were near the barn on the Contin place; that the boys came to the porch on the run, and that the defendant met and chased them around to the front of the house, that at a front corner of the house the defendant took up a wooden trough that was leaning against the house under a water spout, tried to hit the boys with it, and then threw it at them; that, while the defendant was chasing the boys around the house, the plaintiff ran into the house

from the back porch, got some hot water in a dipper, came to the front door of the house and threw the hot water at the defendant as he was chasing the boys; that the defendant then ran at her trying to hit her with his fists; that the two boys ran for help, that the plaintiff took a position in the kitchen door-way, and that while she stood there the defendant threw a piece of stovewood through the bedroom window, and that one Joe Haley, standing close to the defendant, at the same time threw a large iron nut through the same window; that the plaintiff had an infant child in the bedroom in a crib, that the child cried out, that the plaintiff rushed into the bedroom and found a stick of wood on the floor, and an iron nut in the crib in which the child was, and found the lamp broken and on the floor, and glass from the window on the floor; that the plaintiff picked up the child and took it to Mrs. Contin in the kitchen; that the events thus far narrated followed each other in immediate sequence, and that thereafter for an hour or two, and until the boys returned with help, the defendant and other men in his company threw pieces of iron and wood at and into the house while the plaintiff and her child were therein, and that all these doings greatly frightened the plaintiff; that the plaintiff's husband was away from home on this evening, and that all of the missiles referred to were left where they fell until the following evening, when the husband returned home; that on the evening of his return and the next morning he gathered up these things, some being found in the kitchen, some in the bed-room, some on the front porch, some thereabouts; that he gathered up of these missiles, in the kitchen, an iron link, a drill, a flat-iron, a cant-hook, and two sticks of wood; in the bedroom, an iron nut and a stick of wood; and on the front porch and immediately about it, a piece of iron pump-handle, a barn door hanger, two stove covers, a pair of hinges, a horse-shoe, seven six inch bolts, some eye-bolts, one twelve inch bolt, one sixteen inch bolt, an iron link, an iron pipe, two iron collars, an iron nut, a peavey pick, a sled roller gudgeon, two draw hooks, a coal-chute link, an iron sled-start, two pieces of wagon tire, one scale weight, one iron yoke, one iron hub box, a piece of wagon spring, two pieces of iron called straps of iron, an iron clevis, an iron rod, and two pieces of stovewood.

The plaintiff's evidence tended to show that the plaintiff's husband upon his return found the screen doors on the front of the house all broken, fourteen lights of glass broken out of the front windows, and two out of a cellar window at an end of the house, the window sash broken out of the bedroom window, a bracket broken off from one piazza post, seven clapboards broken and split, and the piazza posts, clapboards, window casings, and door casings dented or otherwise marred in numerous places, and that some of the dents were three-fourths of an inch deep.

The plaintiff's evidence tended to show that the surrounding premises were then examined for the purpose of ascertaining where the missiles found had been taken from, and that there were discovered numbers of fresh tracks leading to a pile of old iron and stovewood on the Roby place, which was across the road from the Contin house, and which was owned in part by the defendant; that snow had been recently removed from this pile, that the pile appeared to have been recently disturbed, and that the iron in the pile was of the same general appearance as that found in and around the Contin house.

Two of the counts in the plaintiff's declaration were, without much difference of phraseology, brief counts for assaulting, beating and ill-treating the plaintiff. One of the counts made the same general charge, and also alleged more particularly that the defendant threw divers missiles of wood and of iron at the plaintiff, and at and into the dwelling house occupied by her, and that the defendant likewise aided, assisted and abetted other persons in doing the same, all with the intent and effect of putting the plaintiff in great fear of bodily harm.

The evidence given by the plaintiff tending to show what the defendant did in chasing the small boys when they came up at their sister's call was received under objection and exception. But the plaintiff was entitled to narrate precisely as it occurred this continuous and inseparable performance, beginning and ending, as her evidence tended to show, in a direct assault upon her.

No rule of evidence required her to make her narrative unintelligible by leaving out the part objected to. *Smith's Admr.* v. *Smith*, 78 Vt. 33, 61 Atl. 558. The ground on which the evi-

dence was offered and received was that it bore upon the question of exemplary damages, and it was properly received upon that ground, for it tended to show that the doings by the defendant of which the direct assault upon the plaintiff was an immediate part proceeded from a wanton, evil and wicked motive. It tended to show his motive in the very matter of the charge against him. *Earl* v *Tupper,* 45 Vt. 275; *State* v. *Roby* 83 Vt. 121, 126, 74 Atl. 638; *Devine* v. *Rand,* 38 Vt. 621; *Ellsworth* v. *Potter,* 41 Vt. 685; *Hoodley* v. *Watson,* 45 Vt. 289, 12 Am. Rep. 197. Subject to objection and exception the plaintiff identified the drip-trough which the defendant threw at the boys and the drip-trough was received in evidence. This was admissible for the same reasons that the evidence concerning it was admissible.

Subject to objection and exception the plaintiff testified that she recognized the defendant and Joe Haley as two of the men in front of the house and that she saw the defendant throwing wood towards the house and into the bedroom window, and that when the defendant threw the wood, he and Haley were together, and that, at about the same time that the defendant threw the wood, Haley threw an iron nut. This was all admissible, for what the defendant threw at the dwelling house while the plaintiff was therein tended to sustain the count for an assault by putting her in fear of bodily harm in that way, and the evidence tended to show that Haley was acting jointly with the defendant and that Haley's acts in bombarding the house were in law the acts of the defendant.

The plaintiff disclaimed any right to recover for acts which were not the defendant's and no exception was taken to the charge upon the subject of what would constitute his acts, nor was the charge upon any other subject excepted to.

The plaintiff testified, subject to objection and exception by the defendant, that in April, following the January in question, on an occasion when the defendant was riding by the house, he shouted out to her and her husband: "There is lots more iron to throw towards the house." This announcement of the defendant, considered in connection with the evidence tending to show that the stovewood and the old iron thrown on the night in question came from the Roby place, in which the defendant

had an interest, was in the nature of an admission by the defendant of responsibility for the entire bombardment of the house on the evening in question, and so it was properly received. Its weight was for the jury.

The testimony as to the condition of things in and around the house found by the husband upon his return home was received subject to objection and exception. The objection urged is that there was no evidence tending to connect the defendant with all those things. We have referred to the evidence tending to show that the party of men in question did not meet in front of the house through any coincidence, but that they approached it together, the defendant being dressed up in woman's clothes, to the evidence tending to show that the material for the bombardment was got by uncovering a heap of scrap iron and wood on the Roby place, of which the defendant was one of the owners, to the taunt, in the nature of an admission, made by the defendant, and we think the evidence did tend to connect the defendant with the entire proceedings on the evening in question. The defendant suggests that the jury must have drawn the inference that they were trying a case of damage to the house, but there is nothing in any offer, or ruling, shown by the bill of exceptions to suggest this, and as there was no exception to the charge, it is safe to say that the jury were not left to go astray as to the nature of the case.

The plaintiff's husband had taken some photographs of the house after marking the house, as he testified, to show in chalk the dents to which he had testified. Both the plaintiff and the photographer testified about the photographs and they were received as exhibits subject to objection and exception, but as the only objection urged to their admission, is that which is urged against the testimony of the plaintiff about the condition of the house and its surroundings, it is enough to say that the objection is not sound.

Upon cross-examination of the plaintiff the defendant's counsel asked her this question: "You have received some money have you not on account of this damage?" Objection was made by the plaintiff who claimed that the evidence called for was not admissible under the pleadings. The defendant's

counsel stated that he did not claim that the plaintiff had received anything from the defendant, but did claim that she had received something from the men who were with the defendant on the occasion in question. The court made a ruling excluding the evidence as the matter then stood. The defendant's counsel then offered to show that the plaintiff had already received $25.00 from Haley in settlement of all claims and demands for damage against him, Joseph Glode, and John Pomaleau, whom the offer stated to be the three men who were with Roby throughout the whole of the transaction in question and to have been joint tort-feasors with the defendant if any tort was committed. The offer was to show further that Haley paid the plaintiff $53.37 "for damage arising". The offer was to show these things for their bearing upon the question of damages solely. On the offer made the evidence was excluded. Since the offer to show that Haley had paid the plaintiff $53.37 "for damage arising" was connected with the offer to show that he had paid $25.00 in full settlement of all claims in favor of the plaintiff against him and others, and since it might as well have related to damage to property as to person there was nothing to show the relevancy of this part of the offer. As to that part of the offer which related to the payment of money by joint tort-feasors, the case of *Chamberlain* v. *Murphy*, 41 Vt. 110, is authority for the proposition that such payment may be shown by a defendant, in reduction of damages, though not pleaded, although in that case Judge Peck dissented from any such proposition. But here the plaintiff was putting in her case and the proposed cross-examination related to nothing about which she had testified, and in excluding the offered evidence, "as the case then stood" and on "the offer as made" the court did not deprive the defendant of any right, but in effect notified the defendant that so much of the offered evidence as was material would, if it existed, be passed upon, if offered properly and as a part of the defendant's case. There was no error in the rulings of the court, which had reference only to the form of the offer and the order of evidence. The rule that the cross-examination of a party need not be confined to the matter of his direct examination, does not prevent the court from reasonably controlling the order of evidence.

Upon cross-examination the plaintiff's husband was asked if he complained to the state's attorney against the defendant and testified in court against him. The husband replied that he did. The defendant's counsel then asked the witness this question: "And you caused him to be fined in this court didn't you?" In support of this question the defendant's counsel offered to show what the witness had just admitted, and also that in the criminal proceeding the defendant had been fined $50.00 and costs amounting to $94.00. This offer was made as bearing upon the prejudice and animus of the witness, for the purpose of mitigation of exemplary damages, and as tending to show the defendant's present financial condition for its bearing upon the question of such damages. The question was excluded upon the offer made and the defendant excepted. The defendant had already shown the connection of the witness with the criminal prosecution. That a defendant in a civil case for assault had been punished criminally for the same assault is not material upon the question of exemplary damages or the amount thereof, and if it can be made so by reference to the defendant's present resources, *Rea* v. *Harrington,* 58 Vt. 181, 2 Atl. 475, 56 Am. Rep. 561, there must at least be an offer of what the defendant expects to show regarding his financial resources. The offered evidence was properly excluded as the case then stood, and because the offer was too broad. The rule that an offer need not accompany questions on cross-examination was inapplicable.

The plaintiff was re-called for further cross-examination, and was asked if "right after January 10," she made complaint against the defendant and the others with him on the evening of that day. She answered that she did. She was then asked what the complaint was. Objection being made, the court asked the defendant what the objection was, and from the answer of counsel it appeared that there was no claim that her complaint was inconsistent with her testimony, but the claim was thus stated: "That she made a complaint against him [the defendant] and the rest of these boys up there for disturbing the peace, that they were prosecuted and fined for it, and that the evidence is admissible, not only as showing the animus of these people, but as showing the extent of this

man's present resources, and as bearing upon the question of punitive damages."

The offered evidence was excluded and the defendant excepted. Upon the question of the animus of the plaintiff it was discretionary with the court to stop the cross-examination after the witness had testified that she made complaint. Besides the claim was that the offered evidence bore upon the animus of "these people" that is of the plaintiff and her husband, while it could have borne upon the animus of the plaintiff alone. That part of the claim which amounted to an offer to show that the defendant was fined for a breach of the peace had nothing to do with the animus of the plaintiff in making complaint. That part of the claim which was that the offer bore upon the question of exemplary damages in that it showed the extent of the defendant's resources was without merit for the offer made no reference to the amount of the fine.

The offer disclosed that the evidence was wanted in part at least for immaterial and irrelevant purposes and it was therefore properly excluded.

The defendant in putting in his case testified upon the subject of his lack of means, and testified further to rendering financial aid to a sister. On cross-examination the fact was brought out that his sisters were six in number, all of age and all married. This was under objection and exception. But it was proper cross-examination upon a matter testified to by the defendant. If it was immaterial, it was because the direct examination to which it related was immaterial. The defendant cannot complain. *Berry* v. *Doolittle,* 82 Vt. 471, 475, 74 Atl. 97; *Lytle* v. *Bond,* 40 Vt. 618.

The defendant offered in evidence the record and the docket entries in the case against him for a breach of the peace for the purpose of showing that on account of the performances of the night in question he had paid a fine of $50.00 and costs to the amount of $94.46. These were offered not only for the purpose of showing the defendant's financial condition, but as bearing upon the question of exemplary damages, and in mitigation of such damages. The evidence as set forth in the offers was excluded. The defendant had already been allowed to testify to his indebtedness to his counsel which included the·

fine and costs referred to which counsel had paid in behalf of the respondent. The court was right in excluding the record and the docket entries, since, if for no other reason, they were offered as bearing upon the question of exemplary damages otherwise than as they bore upon the financial condition of the defendant, and the offer was too broad. *Crahan* v. *Chittenden*, 82 Vt. 410, 74 Atl. 86. All the offers respecting the fine and costs in the criminal case were so framed as to urge the punishment of the respondent in the criminal case as a ground for denying, or mitigating, exemplary damages in the civil case, and so they were properly excluded. *Edwards* v. *Leavitt*, 46 Vt. 126; *Hoodley* v. *Watson*, 45 Vt. 289, 12 Am. Rep. 197; *Roach* v. *Coldbeck*, 64 Vt. 593, 24 Atl. 989.

The defendant excepted to the judgment of the court as rendered. He claims that the judgment is illegal because one count of the declaration set out four distinct assaults. The nature of this count has been sufficiently stated. This claim is, in effect, that the judgment is illegal because one of the counts is bad for duplicity. But duplicity in a count can be taken advantage of only by demurrer, and that special. So this exception to the judgment answers no purpose.

This case was passed up on briefs. Some exceptions to rulings upon evidence appear by the bill of exceptions that are not noticed on the brief of the excepting party. These have not been considered.

*Judgment affirmed.*