FELIX GOULETTE'S ADMINISTRATOR *v.* GRAND TRUNK RAILWAY COMPANY.

February Term, 1919.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ., and FISH, SUPR., J.

Opinion filed May 6, 1919.

*Negligence—Evidence—Res Gestae—Declarations Not Contemporaneous With Accident—Photographs—Harmless Error —Judicial Notice—Interstate Commerce Commission— Safety Appliance Standards and Regulations—Matter of Conjecture—Direction of Verdict.*

Declarations, to be admissible as a part of the *res gestae*, must grow out of the transaction in issue, serve to illustrate its character, be contemporaneous with, and derive credit from, it.

In an action against a railroad under the Federal Employers' Liability Act for the death of its brakeman, his spontaneous exclamation shortly after the train passed over him, and while he lay beside the track, that he fell from a car without a running board, was inadmissible as a part of the *res gestae*, it not being contemporaneous with the accident.

A photograph showing several things not admissible in the case was properly excluded in the court's discretion; and its exclusion was harmless because the material matters sought to be shown by it were shown by plaintiff's other pictures admitted in evidence.

The Court will take judicial notice of the safety appliance standards of the Interstate Commerce Commission.

Regulations provided for by law as to the standards of equipment to be used on all cars subject to the provisions of the Federal Safety Appliance Act, but which are carried out in detail by the Interstate Commerce Commission, are of binding force upon the public.

Since there was no evidence to show how the brakeman, plaintiff's intestate, fell from the car, the solution of that question was pure speculation, and there was no question for the jury, and a verdict for the defendant was properly directed.

ACTION ON THE CASE under Federal Employers' Liability Act to recover damages for the benefit of the next of kin, on account of claimed negligence in hauling a rack car not equipped with running boards and ladder platforms. Pleas, the general issue, and assumption of risk. Trial by jury at the April Term, 1918, Essex County, *Slack,* J., presiding. At the close of the evidence the Court directed a verdict for the defendant, and judgment on the verdict. The plaintiff excepted. The opinion states the case.

*C. R. Powell, E. A. Cook,* and *Searles & Graves* for the plaintiff.

*John W. Redmond* for the defendant.

FISH, Superior Judge. The facts are these: On August 24, 1917, the decedent, a brakeman of 8 or 9 years' experience, with the other members of the crew, took a freight train from Island Pond, Vermont, to Gorham, New Hampshire, a distance of 51 miles, where the train arrived at five o'clock in the afternoon. About an hour later the train with the same crew started to return to Island Pond having 13 cars in the train. It reached Berlin, New Hampshire, about 7 o'clock, where 46 cars were taken in, making a train of 59 cars in all. The decedent assisted in coupling the air hose, let off the brakes, and worked the train at Berlin when it pulled out. The cars taken in at this place were assembled on one track. The train stopped at Percy, New Hampshire, about 9 o'clock, and at North Stratford about 11:30 o'clock. The decedent walked by the train at Berlin and later at Percy. Leaving the latter place, the train encountered a heavy grade, and, as it pulled hard, decedent went back from the engine on the ground to see if there was any trouble with the brakes. It was the duty of the decedent as the head brakeman to take the signal from the rear brakeman when the train was in the clear on taking a siding.

Among the cars taken into the train at Berlin was a Quebec Central rack car numbered 1765. This was the twenty-sixth car from the caboose. The car immediately ahead of this was Grand Trunk car numbered 61046, and the car following it a box car. Car 1765 was a flat bottom car which had been converted into a rack car by the erection of 12 stakes 9 feet high on either side

and of 5 at each end, of the same height.   These stakes were 4 x 5 inches in size and were placed with the greater diameter extending outward from the car.   They were attached on the sides to sockets in the car beam and when in place the inside of the stakes were flush with the outside of the beam.   At the ends of the car the stakes were set on the crossbeam 9 inches from the edge of the beam measuring from the outside of the stakes.

The car was equipped with end and side ladders on the outside.   The end ladders were located where they are always found on freight cars on the left corner as one faces the end of the car.   The side ladders were on the side of the car on the same corner as the end ladders.   The car had ladders on the inside which communicated with the end ladders on the outside.

At each end of the car on the outside was a grab iron 45 inches above the sill and extending across the end to within 18 inches of the corner.   The sill projection of the car in front of the rack car was one foot.   There was no running board over the top of car 1765 and no boarding thereon.   Cross timbers were attached to the ends of the stakes at the top extending from side to side of the car.   The sides and ends of the car were boarded up with narrow boards with spaces between.   The boards were attached to the stakes on the inside.   In passing over the train one would have to use a ladder when he came to this car to reach the top of the car, then would go down the inside ladder and cross the bottom of the car diagonally, then go up the inside ladder at the opposite corner from the one he descended and down the outside ladder opposite.

The train arrived in Island Pond yard at one o'clock in the morning, August 25th.   It was dark and rainy and had been so through the night.   Decedent was in the line of his duty riding in the caboose.   When the train reached the yard, it was his duty as head brakeman to go along the top of the train to the engine.   On reaching the semaphore in the yard, he left the caboose with a lighted lantern and proceeded over the top of the train toward the engine.   When last seen on the train he was about 10 cars from the caboose.   He was next seen on the ground on the south side of the track about 60 rods east of the Island Pond station, where his cries attracted the attention of the other trainmen.   About half of the train had passed over his body, but he had extricated himself from between the rails when found.   He held the lantern in his hand, but the globe was

broken. He died from his injuries four hours afterwards. Pieces of glass were soon discovered on the rear sill of car 61046 at a point about a foot southerly of the drawbar.

1. Plaintiff complains of the exclusion by the trial court of his offer to show that shortly after the train passed over the decedent, and while he lay beside the track, he said: ''I fell off from a car without a running board.'' This was offered as part of the *res gestae* for the purpose of showing that plaintiff's intestate fell from car 1765, which was not provided with running boards and platform, and as explaining the condition of the plaintiff's intestate when they found him at that time.

The doctrine of the subject of *res gestae,* as it is understood and applied in the courts of this State, is fully discussed in the recent case of *Comstock's Admr.* v. *Jacobs,* 89 Vt. 133, 94 Atl. 497, Ann. Cas. 1918 A, 465, and the law settled as to the rules that govern the admission of verbal acts which constitute a part of the *res gestae.* In order to make such evidence admissible the following combined requirements must be met: There must be a principal fact or transaction in issue or relevant thereto. Then only such declarations are admissible as grow out of the transaction, serve to illustrate its character, are contemporaneous with, and derive credit from, it. The act itself must be equivocal, and the declaration must give definite significance to it by supplying what is missing. The declaration must be part of the transaction and must be offered to qualify and explain it, the words being subsidiary and appurtenant to the act.

The offered evidence plainly fails to meet the requirements of the law; for, whatever may be said in favor of the offer coming within some of the provisions of the rule stated, it signally fails when applied to all the requirements, and these must be met if the evidence is to be received. It is sufficient for the purpose of this discussion to call attention to that part of the rule that requires that the declaration shall be contemporaneous with the transaction. In this regard the offer falls short of the requirement. The declaration was a mere narrative of a past event and as such could not be admitted under our decisions.

The plaintiff does not seriously contend that the Jacobs case is not authority against him on the subject of verbal acts, nor does he question the reasoning of the Court as applied to the facts of that case. But he says the case is not an authority against the admission of decedent's declaration on the ground

that it was a *spontaneous exclamation* so associated with the events preceding and accompanying it as to make it evidence.

A typical case of this kind is a statement or exclamation by an injured person immediately after the injury, declaring the circumstances of the injury, or by a person present at an affray, a railroad collision, or other exciting occasion asserting the circumstances of it as observed by him. 3 Wigmore on Evidence, § 1746.

The plaintiff insists that the law as laid down by Professor Wigmore exactly fits this case, that the statement offered was made on just such a startling occasion, before there was time to fabricate and concerning the circumstances of the occurrence, as the law contemplates. It must be admitted that the facts of this case make a typical case of the kind referred to by Professor Wigmore, but this is a question upon which different jurisdictions have divided in opinion. Some states, whose courts are entitled to the highest respect, have admitted such declarations, while others have excluded them. It is enough for the purposes of this case that the courts of Vermont have taken the latter view of the law. The rule in Vermont was stated by REDFIELD, C. J., in *State* v. *Davidson,* 30 Vt. 377, 383, 73 Am. Dec. 312, as follows: "It is well settled that the declarations of a party, injured when no one is present, are not evidence to show the manner in which the injury occurred, however nearly contemporaneous with the occurrence. Such declarations do not tend to characterize the transaction, and are, by consequence, no part of it, and cannot be admitted as such." In the case of *Downer and Wife* v. *Strafford,* 47 Vt. 579, the facts show that an accident had happened whereby the wife had been thrown to the ground. Immediately and as soon as witnesses could go about six rods and while the said plaintiff was still lying on the ground and her son was holding the horse right near her, the son told what caused the accident. It was held that the declaration was mere hearsay and not admissible as part of the *res gestae.* WHEELER, J., in disposing of the question said: "His statement was a narrative of a past transaction, and not a material part of a present one. Such statements are not admissible because they are made about matters so recent that the witness cannot have forgotten, nor have had time to concoct the statement, but only because they are material parts of a transaction then going on, or would qualify or modify something then being done." From the foregoing it ap-

pears that our courts very early refused to admit statements from parties injured in cases like this, as well as from persons present on exciting occasions. These decisions have been adhered to by this Court. *Worden* v. *Powers,* 37 Vt. 619; *State* v. *Carlton,* 48 Vt. 636; *State* v. *Wood,* 53 Vt. 560; *State* v. *Raymo,* 76 Vt. 430, 57 Atl. 993.

2. In connection with the testimony of the conductor of decedent's train, a photograph was offered for the purpose of showing where the lantern glass was found on car 61046, the width of the car sills, and the distance a brakeman had to pass in getting from one car to another. The photograph includes the whole of car 61046, which is a rack car with a running board the front part of car 1765, parts of numerous other cars in the Island Pond yard, and objects in the background. The photograph was offered for the purpose stated, whereupon the court ruled as follows: "It may be excluded at this time." It was not again offered. Defendant insists that the exception stands as did the exception in *Dubois* v. *Roby,* 84 Vt. 465, 80 Atl. 150, where this Court held that it was the duty of counsel to again make the offer, and, not having done so, the same is to be treated as withdrawn. But treating the exception as having been well taken for the purposes of this case, its exclusion was not error. The objection that it showed several things that were not admissible in the case justified the action of the trial court. The admission of photographs lies largely within the discretion of the trial court. *Hassam* v. *Safford Lumber Co.,* 82 Vt. 444, 74 Atl. 197; *Davis* v. *Dunn,* 90 Vt. 253, 98 Atl. 81, Ann. Cas. 1918 D, 994.

Moreover, the excluded evidence was harmless for the reason that all the material matters, including distance between the cars, and width of sills, were shown by plaintiff's other pictures which were admitted in evidence.

3. At the close of the evidence, defendant moved for a directed verdict for the reasons: (1) That the evidence failed to show actionable negligence that was the proximate cause of the injury; (2) that there was no evidence tending to show that the injury was due to the lack of a running board or ladder platform, or both; (3) that there was no evidence tending to show how plaintiff's intestate fell from the car, making the solution of that question pure speculation; (4) that the car in question was equipped as was required by the Federal law and defendant

had no right to fail to transport it; and (5) that the plaintiff's intestate assumed the risk.

The motion was properly granted. It will not be necessary to consider all the grounds stated but only such as are most pertinent to the decision. The car in question was tendered the defendant in interstate commerce, and the point is made that the railroad had no right to refuse its transportation.

Section 1 of the Acts to Regulate Commerce · (Act Feb. 4, 1887, C. 104, 24 Stat. 379 [4 U. S. Comp. St., § 8563]) provides that "the term 'transportation' shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage," that it is the duty of the carrier to "furnish such transportation upon reasonable request therefor, and to establish through routes."

Section 3 of the Act of Congress, approved April 14, 1910 (Chapter 160, 36 Stat. 298 [U. S. Comp. St., § 8619], entitled "An Act to Supplement an Act to Promote the Safety of Employees and Travelers upon Railroads by Compelling Common Carriers to Equip their Cars" with indicated safety appliances, provides that the Interstate Commerce Commission, after hearing, "shall designate the number, dimensions, location, and manner of application of appliances provided for, * * * and shall give notice of such to all common carriers subject to the provisions of this act, * * * and thereafter said number, location, dimensions, and manner of application as designated by said commission *shall remain as the standards of equipment to be used on all cars* subject to the provisions of this act," unless changed by a subsequent order of the commission.

On March 13, 1911, the Interstate Commerce. Commission, acting under the foregoing statute, promulgated specific and detailed directions as to how each class of cars should be equipped, and, among other things, what cars should be equipped with running boards. Said regulations provide for the equipping of certain kinds of cars with running boards, but they make no provision for rack cars. It is argued by the plaintiff that this question is not properly before the Court for the reason that the evidence received during the trial to the effect that car 1765 was properly equipped according to the Federal act was inadmissible. It is not necessary to consider this question for the reason, that the Court will take judicial notice of the safety appliance standards of the Interstate Commerce Commission, and these do

not show that either· running boards or ladder platforms are re-
quired on cars like the one in question.

Regulations of the kind under consideration, which are pro-
vided for by law but carried out in detail by the Interstate
Commerce Commission, are of binding force upon the public.
*Interstate Commerce Commission* v. *Goodrich Transit Co.*, 224
U. S: 194, 56 L. ed. 729, 32 Sup. Ct. 436; *United States* · v.
*Grimaud,* 220 U. S. 506, 55 L. ed. 563, 31 Sup. Ct. 480; *Kansas
City S. R. Co.* v. *United States,* 231 U. S. 423, 58 L. ed. 296, 34
Sup. Ct. 125, 52 L. R. A. (N. S.) 1.

The safety appliance standards of the Interstate Commerce
Commission were not offered in evidence in this case, but this is
not important as the Court may take judicial notice of them. In
the case of *Caha* v. *United States,* 152 U. S. 211, 38 L. ed. 415, 14
Sup. Ct. 513, the United States Supreme Court, in a case involv-
ing the question of regulations made by the Interior Department,
speaking by Mr. Justice Brewer, said: ''The rules and regula-
tions prescribed by the Interior Department in respect to con-
tests before the Land Office were not formally offered in evi-·
dence, and it is claimed that this omission is fatal, and that a
verdict should have been instructed for the defendant. But we
are of the opinion that there was no necessity for a formal in-
troduction in evidence of rules and regulations. They are mat-
ters of which courts of the United States take judicial notice.
Questions of a kindred nature have been frequently presented,
and it may be laid down as a general rule, deducible from the
cases, that wherever, by the express language of any act of
Congress, power is intrusted to either of the principal depart-
ments of government to prescribe rules and regulations for the
transaction of business in which the public is interested, and
in respect to which they have a right to participate, and by which
they are to be controlled, the rules and regulations prescribed
in pursuance to such authority become a mass of that body of
public records of which the courts take judicial notice.''

It is urged by the defendant that, car 1765 having been
equipped in accordance with the standards of the Interstate
Commerce Commision, no jury should be allowed to say that it
was negligently or improperly equipped, but the learned counsel
for the defendant is unable to cite any authority upon this ques-·
tion. It is unnecessary for this Court to pass on this question.
or on the other question as to whether the defendant was bound

to take car 1765 in interstate commerce.     The case clearly is for the defendant on another ground.

There is no evidence tending to show how plaintiff's intestate fell from the car, making the solution of that question pure speculation, and on this account there was nothing for the jury.     If it is admitted that decedent fell between car 1765 and car 61046, as is claimed by the plaintiff and seems not unlikely, whence did he fall?     Did he fall while attempting to leap from the top of car 1765 to the top of car 61046?     Did he attempt to go down the ladder at the west end of car 1765 and fall in descending?     Had he safely descended the ladder and was he proceeding along the sill of car 1765 when he fell?     Then what made him fall?     Was it a misstep, a tripping of the toe, the losing of his balance, a lurch of the train, a sudden dizziness, or a lack of attention to the perilous work he was doing?     No answer to any of these questions is afforded by the evidence, and to attempt to answer them or to solve the question as to what made him fall would be to indulge in unwarranted speculation.     In oral argument plaintiff's attorneys were unable to point out how the accident happened and attribute it to the dangerous trap between the cars.     In their brief they say that the decedent was thrown or fell from the train while climbing from car 1765 to car 61046, so that he must have been in the dangerous trap between the cars, and they therefore reason that the absence of running boards and ladder platforms were the proximate cause of his death.     This by no means follows.

This is a case where the evidence is equally consistent with the existence or nonexistence of negligence, and in such cases there is nothing for the jury.

Section 1672 of Bailey on Personal Injuries states the applicable law as follows:

"When the evidence is equally consistent with either view— the existence or nonexistence of negligence—it is not competent for the judge to leave the matter to the jury.     The party who affirms the negligence has failed to establish it.     This is a rule which never ought to be lost sight of.     An inference cannot be drawn from a presumption, but must be founded upon some fact legally established." *Manning* v. *Ins. Co.*, 100 U. S. 693, 25 L. ed. 761; *United States* v. *Ross*, 92 U. S. 281, 23 L. ed. 707; *Welshausen* v. *Charles Parker Co.*, 83 Conn. 231, 76 Atl. 271; *Corcoran* v. *B. & M. R. R.*, 133 Mass. 507; *Lopez* v. *Campbell*,

163 N. Y. 340, 57 N. E. 501; *White* v. *Lehigh Valley R. R. Co.,*
220 N. Y. 131, 115 N. E. 439.

This disposition of the case makes it unnecessary to pass on
the other questions raised during the trial.

*Judgment affirmed.*