### CHARLES STEVENS *v.* GARDNER G. SMITH.

The plaintiff bargained and sold to the defendant " old potash kettles," at a price agreed upon of one cent per pound, which the defendant purchased for the purpose of melting and making into stove castings. Upon breaking up the kettles it was found, that only one half of the iron, by weight, was suitable for the purpose for which it was purchased. The defendant gave no warranty, and was guilty of no fraud in the sale, and was in fact ignorant of the defect in the iron. And it was held, that there was no implied warranty of the quality of the iron, which would preclude the plaintiff from recovering for the entire weight, at the price agreed upon.

And it was also held, that proof of the custom of the defendant to deduct from the weight of iron purchased by him that which, upon trial, was found unsuitable for use would not avail the defendant, it not appearing, that the plaintiff had knowledge of such custom at the time of the sale, and there being no evidence of any such general usage.

And it having been agreed between the plaintiff and defendant, in such case, as part of the contract of sale, that the kettles should be paid for in part by delivering to the plaintiff a note, which the defendant held against a third person, and the defendant having refused to deliver the note, upon demand, after the delivery of the kettles, claiming that he was under no obligation to pay for so much of the iron, as, upon trial, was found unfit for the use for which he purchased it, and that the amount for which he was bound to pay was not equal to the amount of the note, and the plaintiff having thereupon commenced this suit to recover the price of the iron, it was held, that the defendant was not now entitled to claim, that the amount of the note should be deducted from the price of the iron.

BOOK ACCOUNT. Judgment to account was rendered in the county court, and an auditor was appointed, who reported the facts substantially as follows.

In February, 1843, the plaintiff proposed to sell to the defendant, at St. Albans, four old potash kettles ; and the defendant purchased them, and agreed to allow the plaintiff for them one cent per pound, and to pay the same by transferring to the plaintiff a promissory note, which the defendant held against one Willard, then amounting to about $22,00, and the balance, if any, in money. Willard was present at the time this agreement was made, and the plaintiff requested the defendant to deliver the note to Willard at any time when Willard should call for it, after the defendant should receive

the kettles,—which were to be sent from Enosburgh, where the plaintiff resided. The plaintiff at the time was indebted to Willard, and his object in selling the kettles was mainly to enable him to pay his debt to Willard, as Willard had agreed, that if the plaintiff would pay or take up the note held by the defendant, it should apply upon the debt of Willard against the plaintiff. The plaintiff accordingly sent the kettles to the defendant, at St. Albans, and the defendant received and weighed them, and delivered to the plaintiff's agent, who delivered the kettles, certificates acknowledging the receipt of three thousand pounds of old iron,—which was the weight of the kettles. The defendant was engaged in the business of casting stoves and other ware, and his object in buying the kettles was to melt them as old iron,—all which was well known to the plaintiff; but upon breaking the kettles, for the purpose of melting them, about one half in weight was found to be so badly burned, as to be wholly unfit for the use, for which they were purchased, or for any other purpose. A portion of all kettles, that have been much used in melting potash, is unfit for use in making new castings; and it was understood by the parties, at the time of the sale, that the kettles in question had been used in the manufacture of potash. It was the custom of the defendant, in purchasing old iron, to reject, without paying therefor, all that was unfit to be melted and put into new castings; and the current value of old iron of good quality was one cent per pound ;—but it did not appear, that the plaintiff knew of this custom of the defendant, or that the defendant notified him of any such usage in the business;—nor did it appear, that the plaintiff knew, that any part of the kettles was unfit for the use for which the defendant purchased them. After the delivery of the kettles to the defendant, Willard and the plaintiff called upon the defendant for the note above mentioned ; but the defendant refused to deliver it, upon the ground that it was not fully paid. But the defendant was always ready to deliver the note to the plaintiff on payment of the amount due upon it, including in such payment the sum of $15,00, which was the value of that part of the kettles which was suitable for the defendant's use.

Upon these facts the auditor decided, that the plaintiff was entitled to recover for the entire weight of the kettles, at the price agreed upon,—amounting, with the interest, to $39,00.

The county court accepted the report, and rendered judgment thereon for the plaintiff, for the amount reported due by the auditor. Exceptions by defendant.

*J. & J. G. Smith* for defendant.

If one person sell property to another for a particular use, and it is worth nothing for any other purpose, and the purchaser have no means of knowledge as to its fitness, not having seen it, there is an implied warranty on the part of the vendor, that the property is suitable for the purpose for which it is purchased. *Conner* v. *Henderson*, 15 Mass. 319. In this case it appears, that the defendant purchased the kettles for the purpose of manufacturing them into new castings, and that this was known to the plaintiff. It cannot be supposed, that either party understood, that such part of the kettles, as was mere cinder and of no value, should be paid for by the defendant at any price.

But if the defendant is held liable for the whole weight of the kettles, the amount of the note against Willard should be applied in part payment therefor, as was agreed by the parties.

*H. E. & H. S. Royce* for plaintiff.

The facts reported, that the defendant agreed to pay the plaintiff one cent per pound for the kettles, and that the plaintiff delivered the kettles to the defendant, relying upon this agreement, will entitle the plaintiff to recover for their full weight, unless this right is varied by the defendant's custom of rejecting such parts as were not suitable to melt. But this custom cannot prevail,—1. Because the plaintiff was not notified of any such custom;—2. Because it is not found, that it was a *general* custom;—3. Because the defendant understood the quality of the iron he was purchasing much better than the plaintiff.

The opinion of the court was delivered by

KELLOGG, J. We discover no sufficient reason for disturbing the judgment of the county court. The claim of the defendant, to have deducted from the plaintiff's account such part of the kettles as proved, upon trial, to be unsuitable for the purposes for which the defendant purchased them, is untenable. There was no warranty

of the kettles, nor is it pretended, that the plaintiff was guilty of any fraud in the sale, or that he had any knowledge of the existence of the defect in the iron, of which the defendant complains. Indeed the case finds, that the plaintiff was ignorant of such defect. The defendant was engaged in the purchase and manufacture of iron of this description, and may well be supposed better qualified to judge of its value and fitness for the purposes for which it was purchased, than the plaintiff. The plaintiff made no representation of the value or quality of the iron. At the time of the delivery of the kettles the defendant had an opportunity to examine them. He received them without objection.

It is not, then, on the ground of fraud, or misrepresentation, of the plaintiff, that this deduction can be claimed; but it is said, that, upon the sale there was an implied warranty, that it should answer the description of the property sold, and the case of *Conner* v. *Henderson*, 15 Mass. 319, has been cited in support of the proposition. Admitting the doctrine contended for, we do not perceive, that it will aid the defendant. The plaintiff bargained and sold to the defendant " old potash kettles," and I suppose it is not denied, that the kettles delivered were of that description. The case of *Conner* v. *Henderson* is not analogous to the case at bar. In that case the property delivered did not answer the description of the property sold, and yet, as the defendant was ignorant of the defect, there was no fraud, and consequently the court held him not liable in the suit. But in the case at bar, the kettles delivered fully answered the description of those sold.

Nor can the particular usage of the defendant, of deducting from the weight of the iron he purchases that, which, upon trial, is found unsuitable for use, avail him; inasmuch as the knowledge of such usage is not carried home to the plaintiff, and, consequently, he cannot be supposed to have contracted with reference to such usage, and the case finds no such *general usage.*

It is also insisted, that the auditor should, at least, have deducted from the plaintiff's account the amount of the note against Willard, inasmuch as, by the terms of the contract, the note was to be received in payment for the kettles. To this we deem it a sufficient answer, that the report shows, that, after the delivery of the kettles, the defendant, in violation of his contract, utterly refused to deliver the

note to either Willard, or the plaintiff. The plaintiff, then, was driven to the necessity of commencing his suit to recover his account ; and it comes with ill grace from the defendant, after having repudiated the contract, and after the institution of this suit, to claim allowance of the Willard note. Such claim cannot be allowed. He could only claim that by force of the contract ; and having repudiated the contract, he must now look to the maker of the note for payment.

The judgment of the county court is affirmed.