The opinion of the court was delivered by
Bkewek, J.:
The facts in this case are substantially as follows : The plaintiff is a farmer living near the city of Atchison. Defendants are doing business as millers in the city of Atchison. Plaintiff was in the habit of stopping there and buying bran for the purpose of feeding his stock. On January 31, 1880, in the usual way, he stopped and bought a sack of bran, paying therefor forty cents. In the bran were two copper clasps, such as were used about the mill. These clasps were swallowed by one of plaintiff’s cows, and lodging, one in the paunch and the other in the stomach, poisoned and killed her. Thereupon he brought this action against the millers, and recovered a judgment for the value of the cow; and for the purpose of reviewing the proceedings, defendants bring this case here. It appears, from the testimony that the arrangements in the mill were such that the sack was fastened to the end of a spout, through which the bran was discharged into *666 it, and that sometimes some of the bran spilled upon the floor, and was thence gathered up and placed in the sack. How these clasps found their way into the bran is not disclosed by the evidence. The jury in answer to one of the special questions found that defendants were not negligent or careless. Plaintiff claims a right to recover on the ground of an implied warranty; that the defendants were manufacturers; that they sold the bran, the product of their own manufacture, to him, knowing it was to be used in feeding stock, and thereby impliedly warranted that it was fit for such use, and that the same rule applies whether the food be purchased for personal use or the feeding of stock. The amount in controversy in this case is small, yet the principle involved is important.
The unquestioned rule of the common law was, caveat emptor. As is said by the author in 1 Smith’s Leading Cases, p.242:
“The policy of the common law seems to have been to limit the effect of a sale to the transfer of the right of property from the vendor to the purchaser, and to throw the hazards of the purchase upon the latter, unless he had expressly stipulated that they should be borne by the formér. No warranty of quality or value was consequently implied from the sale, either of personal or real estate.”
Upon this recognized policy of the common law, there have been repeated efforts to engraft exceptions, and now it may be conceded that a few have become successfully established. Among them may be mentioned these: Where an article is ordered from a manufacturer, to be by him manufactured for a special purpose, of which the manufacturer has knowledge, there is an implied warranty that the article when manufactured shall be reasonably fit for such purpose. (Craver v. Hornburg, 26 Kas. 94.)
Again, where goods are sold by sample, there is an implied warranty that the goods when delivered shall correspond in quality with the sample. (Field v. Kinnear, 4 Kas. 476; Bigger v. Bovard, 20 Kas. 204.) And a third is, where food is sold by a dealer for domestic consumption, there is an im *667 plied warranty that it is sound and wholesome. Other exceptions may also exist, but it is unnecessary to mention them.
In this case, we have nothing to do with the second exception, but the right to recover is claimed under both the first and the third. It is at least doubtful whether any recovery •can be had within the principles of the first exception; for while the defendants were manufacturers, and the bran a product of their own manufacture, yet the contract of purchase was in no respects an executory one; and in respect to the sale of the bran, they occupied the position of dealers, rather than of manufacturers. The disposition, as manifested in the authorities, is to limit the scope of the first exception to contracts which are in their nature executory, and where the agreement is for the manufacture and delivery of some special article, and not where the contract is simply for the purchase •of a complete and existing chattel. In Broom’s Legal Maxims, p. 614, the rule is thus stated:
“Where an agreement is for a specific chattel in its then ■state, there is no implied warranty of its fitness or merchantable quality; but if a person is employed to make a specific chattel, there the law implies a contract on his part that it - shall be fit for the purpose for which it is ordinarily used.”
In 1 Smith’s Leading Cases, p. 250, the author says:
“The doctrine, that a sale made for a particular purpose, implies a warranty that the thing sold shall be fit for that pnrpose, has been advanced on a number of occasions in this country, although seldom made the ground of direct and positive decision. (Brinton v. Davis, 3 Blackf. 317; Beals v. Olmstead, 24 Vt. 114.) The sounder view seems to be, that no engagement of this sort can be implied against the vendor, save where the contract is partially or wholly executory, and that in this case it is not in the nature of a warranty, but of •an implied stipulation, forming part of the substance of the •contract.”
See also the cases of Rodgers v. Niles, 11 Ohio St. 48; Iron Co. v. Groves, 68 Pa. St., 149; Misner v. Granger, 4 Gilm. 69; Kerr on Sales, p.106; Benjamin on Sales, §§ 644, and following. After quite a review of the authorities in *668 Smith’s Leading Cases, p. 251, the author sums up the result thus:
“On the whole, therefore, it may be doubted whether there be any instance, in which a knowledge of the object for which a specific chattel is bought, will raise an implied warranty that it is fit for that purpose, although a failure to acquaint the vendor with its unfitness may be evidence of fraud, and thus render the vendor liable in an action of tort. (Kingsberry v. Taylor, 21 Vt. 90; Humphreys v. Comlin, 8 Blackf. 508; Emerson v. Brigham, 10 Mass. 407; Howell v. Cowles, 6 Gratt. 398; Dickson v. Jordan, 11 Ired. 166.) Thus it was decided in Diclcson v. Jordan, that the purchase of rope for use in a seine did not give rise to a warranty of its strength, nor make the vendor answerable for its failure to answer the purpose for which it was bought. These decisions are sustained by the recent cases of Owens v. Dunbar, 12 Irish Law R. 304; Dickson v. Zizinia, 10 C. B. 602; and Burnby v. Bollett, 16 M. & W. 604; which seem to show that the liability of the vendor for the failure of the thing sold to answer the purpose for which it is purchased, is confined to those instances, where the contract is executory, and does not arise in executed sales of specific chattels.”
The reasoning of these cases seems applicable to the case at bai\ While the bran was the product off the defendants’ manufacture, yet it was not manufactured on any contract with the plaintiff. They had on hand a supply of bran, an article already manufactured, and that article the plaintiff purchased. There is nothing in the dealings between the parties which would seem to raise any other implication than would arise if a like purchase had been made by plaintiff of the same article from a dealer; and unless an implied warranty would be raised by the purchase of bran under like circumstances from a grocer, it would then seem that none ought to be implied in the case at' bar. There was no express representation by the plaintiff of the purpose for which he was purchasing the bran; it was not manufactured upon his order, and there were no representations or express warranties on the part of the defendants. They had on hand a manufactured article which they desired to sell, and the plaintiff *669 finding it there, purchased it. It would seem, therefore, that a recovery could not be sustained under the principles controlling the first exception.
Passing now to the third: and the scope of that exception is limited by the decisions. There is.not in every sale of provisions an implied warranty that they are wholesome. Such implied warranty does not exist where one dealer purchases from another. (Moses v. Mead, 1 Denio, 378; Wright v. Hart, 18 Wend. 428; Ryder v. Neitze, 21 Minn. 70; Emerson v. Brigham, 10 Mass. 197; see also the same case reported in 6 Am. Dec. 117, and the note thereto.) It exists only where they are sold for immediate and domestic use, and even then is denied by some authorities. In such cases it seems to be' decided upon principles of public policy, that there is an implied warranty that the provisions sold are sound and wholesome. (Van Bracklin v. Fonda, 12 Johns. [N. Y.] 457; Hoover v. Peters, 18 Mich. 51; Benjamin on Sales, §§ 670-71; and the note in 6 Am. Dec., supra.)
Now the application of this exception to the case at bar is denied. It is said that the principle upon which the exception rests does not apply where the articles sold are not intended for consumption by man, but only for use as food for cattle. No authorities have been found by counsel on either side of this question. We are left, therefore, to determine it upon general principles. Upon what ground is an implied warranty rested in the case of the sale of provisions, which does not exist in the ease of a sale of other articles? Obviously it is not upon any property grounds, or because thereby the estate of either party is affected; but for reasons of public policy, for the preservation of life and health, the law deems it wise that he who engages in the business of selling provisions for domestic use should himself examine and know their fitness for such use, and be liable for a lack of such knowledge. One may not place poison where it is likely to be taken by one ignorant of its qualities. Regard for human life compels this. No more may he sell food unfit to be eaten to a man who, he knows, is buying it to eat. The *670 same reason controls,.to wit, regard for life and health. But this, it will be remembered, is an exception to the general rule of the common law, and the exception should not be extended beyond the reach of the reasons upon which it is-based.
If the preservation of human life and health be, as we-think it is, the foundation of this exception, then it should not be extended to cases in which human life and health are-in no wise endangered. Now the claim of the plaintiff is-simply of a property loss, that his estate has been diminished, and that alone is his cause of action. His injury is similar to that which he would have sustained if he had purchased from a wagon maker a defective wheel, and thereby his wagon had broken down. No matter of life or health of himself or family is involved. We think therefore that no recovery can be had under the principles of this third exception.
Still further, it may be remarked that bran comes veiy nearly within the description given by some of the witnesses-of it as the mere refuse or offal of the mill. It is true, the-jury call it in their verdict a secondary product, resulting from the manufacture of flour. It certainly is not the principal product of the grinding of wheat — not that for which the mill is worked. It is 'that which is left after the flour has been manufactured. It is no uncommon thing in manufacturing establishments, after the principal product is manufactured, that there remains a refuse which is of some value, and which is disposed of by the manufacturer as refuse and for whatever ■ it will bring. Now it would seem to enlarge very broadly the doctrine of implied warranty to extend it to this refuse. It is not that for the manufacture of which the manufacturer engages in business; it is not that to which-lie devotes his special attention'and care; it is always of inferior value. This all parties understand. They deal upon that basis; and to hold that the manufacturer warrants the quality of this refuse, would seem to east an unnecessary burden upon its disposal. See the case of Holden v. Clancy, 53 *671 Barb. 590, also reported in 41 How. Pr. Rep. 1; Wilson v. Dunville, Irish High Court of Justice Ex. Div., 8 Cent. L. J. 375; Turner v. Mucklow, 6 L. T. (N. S.) 690.
Still again, it will be borne in mind that, as the jury find the defendants guilty of no negligence, and also that these-clasps were foreign substances, easily recognizable, which had not been manufactured into or become a part of the bran, but which had accidentally dropped into it, it would seem that, the purchaser had the same facilities for examining the bran and detecting the presence of any foreign article that the defendants had. It would be as easy to search through the contents of a sack of bran as to search through the contents of a bin for any extraneous substances. If there had been any minute particles of foreign substances like lead or copper, too-small to be noticed upon ordinary examination, which in the process of manufacture had been incorporated into and become a part of the bran, or if the defendants had been guilty of any negligence in the manufacture or handling of this bran,, there would be greater justice in holding them responsible. Taking the whole case together, it seems to us that it must be held to be a case of pure accident, a case without negligence on the part of either party, a case in which the doctrine of implied warranty does not exist, and therefore a casein which no recovery can be had.
Entertaining these views, it follows that the judgment must be reversed, and the case remanded for a new trial.
Horton, C. J., concurring.