JAMES COLEMAN *vs.* BENJAMIN F. SMITH COMPANY.

JANUARY 12, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Contributory Negligence.   Verdict Against Law.*

While plaintiff was carrying material into a building in process of construction, he was injured by the falling of a rafter, which escaped from the hands of the workmen, from accidental causes, because of icy conditions, who were moving it about thirty feet above his head.   It appeared that the operations of the workmen on the roof could have been seen, and plaintiff testified that he knew they were engaged there;  had heard them working there,but did not look up or take notice:—

*Held,* that, even if, after verdict, plaintiff could be held to have established negligence of the defendant, he was guilty of such contributory negligence, in placing himself, without looking, in a position of obvious danger from objects which were liable to fall, as to bar recovery.

*Held,* further, that the verdict was in this respect contrary to law, but plaintiff was still entitled, under Gen. Laws, 1909, cap. 298, § 2, to a further opportunity to show cause why judgment should not be entered for defendant.

TRESPASS ON THE CASE for negligence.   Heard on exceptions of defendant, and order entered requiring plaintiff to show cause why judgment should not be entered for defendant.

BLODGETT, J.   On January 3, 1907, the plaintiff, an employee of the Providence Ice Co., had his right leg broken by the falling of a rafter from the top of an ice-house, then being constructed for it by the defendant, and has recovered a verdict in the Superior Court.   The defendant's motion for a new trial having been denied, the case has been brought here on defendant's exceptions to the rulings of the trial judge during the trial, and to the denial of the motion for a new trial;  the grounds of the latter motion being that the verdict was against the law and the evidence, and that the damages were excessive.

The ice-house in question was a building of more than 170 feet in length from north to south and of more than 130 feet in width, and was divided into five compartments, each of about 33 feet in width, extending the entire width of the building.   It was desired to complete the structure as soon as possible, in order that it might be available for the storage of

the ice which might be cut during that winter, and for that purpose the defendant's employees had been working overtime, and certain employees of the ice company were also engaged in grading the floor of the building, while the carpenters were still at work, by spreading sand thereon meanwhile. While the plaintiff was carrying sand in a basket from a pile at the south of the building, through an opening left in the south wall for the use of workmen, and while he was endeavoring to reach the third compartment and passing through the second, a rafter, about sixteen feet in length, two inches thick, and eight inches wide, escaped from the hands of the workmen who were moving it, about thirty feet above the head of the plaintiff, and fell to the ground, and upon a rebound broke the plaintiff's leg. It had rained the previous day, and the rain had been followed by cold weather, so that ice had formed and it was necesssary for the carpenters on the flat roof to use "creepers" on their feet to keep from slipping. The plaintiff had been working at the premises in question about a week prior to the accident, and for about an hour on the day in question, he, with several other employees of the ice company, had been carrying sand into the building for the purpose described, having been engaged in carrying sawdust into the building for about an hour immediately prior to beginning to carry sand as above stated.

The plaintiff testified that both his sight and hearing were good, and that there was good light at the time of the accident. The evidence further shows that the walls of the building had been erected and that certain large tie-beams had been placed in position between the compartments and for the full length of the building, and that the defendant's workmen, to the number of six at last, were then engaged in placing in position purlines from the tie-beams to the sides of the building, and that some six hundred rafters similar to the one which fell on the plaintiff had been raised and laid on these tie-beams and such of the purlines as were already in position until the rafters should in time be needed to be used as supports for the roof.

It also appeared affirmatively, by the testimony of one of the plaintiff's witnesses, that "there was nothing to prevent the

men who were carrying the sand from looking up and seeing the men on the roof."

On cross-examination, the plaintiff testified as follows: "C. Q. 267. You say that there were men working on the roof, is that right, Mr. Coleman? A. Yes sir. C. Q 268. You noticed these men at work there before the accident? A. Well, to the best of my opinion, it was carpenters working up there, and getting ready for the roof or something. C. Q. 269. You knew that carpenters were working up there on the roof, Mr Coleman? A. Yes sir. C. Q. 270. Did you look up to see them? A. No sir. C. Q. 271. Did you look to see whether there were carpenters on the roof or not? A. No sir. C. Q. 272. Did not? A. No sir. C. Q. 273. Didn't take any notice? A. No sir. C. Q. 274. Did you hear the carpenters nailing boards up there? A. Yes sir. C. Q. 275. You heard them nailing boards? A. Yes sir. C. Q. 276. But you didn't look up? A. No sir. C. Q. 277. And you heard them nailing boards previous days? A. Yes sir. C. Q. 278. And you didn't look to see yourself? A. No sir."

(1)      There is no evidence in this record that the rafter in question was either willfully or wantonly thrown from its elevated position by the defendant's employees, without notice to or regard for those who might be underneath; nor any evidence that the falling of the rafter was due to other than purely accidental causes, and that it escaped from the hands of the workmen, who were moving it, because of the ice upon it; and there is abunddant evidence that, when it was seen that it must fall, one or more shouts of warning were given. But even if the plaintiff can be held, after verdict, to have established negligence of the defendant in this respect, we are clearly of the opinion that he was guilty of such contributory negligence as to preclude his recovery. With full knowledge of the icy conditions prevailing, knowing that carpenters were engaged on the roof, and hearing them at their work, with good eyesight and hearing, and in a good light and an unobstructed view, he deliberately placed himself, without looking, in a position of known and obvious danger from objects which were liable to fall upon him from above. It was not a completed building which he entered, but

one known to him to be in process of construction. Such conduct on his part, as matter of law, we must hold to be such contributory negligence as to preclude his recovery, and that the verdict is thus contrary to law. This conclusion renders a consideration of the other questions, raised by the exceptions, unnecessary.

Although the bill of exceptions alleged that the errors complained of therein "entitled the defendant either to a new trial or a judgment in his behalf," and this claim for judgment was pressed at the hearing as well as set forth in the defendant's brief, a majority of the court are of the opinion that the plaintiff is still entitled, under Gen. Laws, 1909, cap. 298, § 2, to a further opportunity to show cause, if he can, why judgment should not be entered for the defendant instead of a new trial granted; and the order will therefore be

Plaintiff to show cause, on January 21, 1910, at 10 A. M., why judgment should not be entered for the defendant.

*Cooney and Cahill*, for plaintiff.

*Gardner, Pirce, and Thornley*, for defendant.

*Willam H. Camfield*, of counsel.