Rockingham, }
Nov. 4, 1914. }

## ESTHER A. HUNTINGTON *v.* WILLIAM RAMSDEN *& a.*

### BESSIE B. TOWLE *v.* SAME.

The testimony of clergymen is admissible to prove the usage or custom of their denomination with respect to the rights of pewholders upon a sale of the church edifice.

The common-law rights of a pewholder upon a sale of the church edifice are limited by the usages and customs of the particular denomination with which the society is affiliated.

ASSUMPSIT, to recover the value of certain pew rights. Trial before *Sawyer*, J., at the January term, 1914, of the superior court, resulting in the following findings and rulings:

The defendants are the trustees of the Methodist Episcopal Society of Newmarket, having succeeded to the trusteeship held in 1871 by John M. Towle and others, and to the title acquired by the latter to certain real estate in Newmarket. Upon this tract, the trustees of 1871 erected an edifice for the society's use as a meeting-house. Owing to the financial condition of the society at that time, it was deemed necessary to sell pews, and many were disposed of by auction, each purchaser receiving a deed signed by the trustees, in the following form: "Be it known that        , in consideration of        dollars, is proprietor of pew numbered    , in the new meeting-house of the Methodist Episcopal Society, in Newmarket, N. H., subject to the rights of said society and to the usages and discipline of the Methodist Episcopal Church." John M. Towle bought pew 39, and Martha S. Towle bought pew 43. The rights in those two pews are now vested in the plaintiffs.

In 1907, the society had become so poor that it met its expenses with difficulty, and therefore voted to federate with the Congregational Church. The defendant Ramsden became pastor of the federated churches. March 4, 1912, the trustees, in accordance with a vote of the society, sold and conveyed the church property for $5,000. The society has not disbanded, but maintains its organization in its integrity. The funds received from the sale of the meeting-house and lot are invested in the name of the trustees. Nothing has been paid to any pewholder for the loss of rights as proprietor.

Subject to the plaintiffs' exception, the defendants were permitted

to introduce testimony of several Methodist clergymen of long service and large experience, some of whom had been presiding elders, tending to establish "usage" of the Methodist Episcopal Church in cases where pews are held by proprietors. From such testimony, it was found to be the usage that pews are free whenever possible; and in cases where it is impossible, proprietary interests are sold, which cease without right of compensation if the meeting-house be disposed of.

The Methodist denomination publishes a volume entitled "Discipline," which defines the "doctrines and discipline of the Methodist Episcopal Church." Copies published in 1872 and 1876 were introduced in evidence, and particular extracts therefrom were read. From this evidence, it was found that the volume does not cover the usages of the church so far as proprietary interests in pews are concerned, and that there are no official written rules, regulations, or memoranda which disclose such usages. The book of Discipline includes, among other things, the rules of the church which apply to free pews, the title of meeting-houses and other church property, and the character and disposition of funds and property of the church or society.

The court ruled as follows: (1) By bringing this action, the pewholders have elected to treat the sale of the meeting-house as valid. (2) The proprietorship of a pew is subordinate to the title of the trustees, and carries with it the right to occupy the pew so long as the title to the meeting-house remains in the trustees and it is used as a place for gathering of members of the society for religious and church purposes, and no longer. (3) The society cannot sell the meeting-house, and so deprive the pewowners of the benefit of their proprietary rights, without compensation therefor, unless it is because of the usage and discipline of the Methodist Episcopal Church.

If the testimony of the clergy was competent to prove the usages of the church, and if such usages and discipline, or either of them, can bar the plaintiffs' right to compensation for the loss of their proprietary interests in their pews, then there is to be a verdict and judgment for the defendants; otherwise, there is to be a verdict and judgment for each plaintiff in the sum of $100.

*Hughes & Doe* (*Mr. Doe* orally), for the plaintiffs.

*Eastman, Scammon & Gardner* (*Mr. Eastman* orally), for the defendants.

PEASLEE, J. This case presents questions touching the rights of pewholders in the Methodist Episcopal Church. It appears that it had become impracticable for the society of that denomination in Newmarket to longer attempt to maintain services in its own church edifice. Provision had been made for services elsewhere, and after the church had stood unoccupied for five years it was sold by the society. Thereupon two pewholders brought suit to recover the value of their pewholding rights.

Subject to exception, several witnesses testified, in effect, that, according to the usage or custom of the Methodist Episcopal Church, when the church edifice is sold the pewholders have no claim for compensation. Objection is made to this evidence upon the ground that the witnesses did not know of more than one or two instances where such transactions had taken place. "It has sometimes been said that a witness to trade usage may state only *specific instances*, or must at least mention one or more in support of his statement of the general practice. This notion is traceable to some remarks of Lord *Mansfield* and later judges, which do not justify it. There have indeed been judges who have refused, on all the facts of a case, to credit testimony to usage, which could not adduce instances in verification. But there is no rule of exclusion. The usage is itself a fact, and the opinion rule does not treat such testimony as an inference from data which can be adequately stated without the inference." 3 Wig. Ev., s. 1954. Argument is also advanced to show that the logic by which the witnesses attempted to justify the continuance of the usage is unsound. But this is immaterial here. It bears upon the weight to be given to the testimony that the usage existed, and that matter was passed upon finally in the superior court.

Upon this evidence, the court found as a fact that it is the usage of the Methodist Church that proprietary interests in pews cease, without right of compensation, when the meeting-house is sold. Taking this finding as a basis, a verdict was found for the defendants. This was in effect a ruling that the pewholder's rights are limited by the usages of the denomination with which he affiliates.

The right is not ownership of real estate. It has been said that it is as accurately described as pew tenancy, as pew ownership. *Jones v. Towne,* 58 N. H. 462, 464; *First Presbyterian Society v. Bass,* 68 N. H. 333, 337. But since it is a mere right to occupancy at times of public religious service, it may be doubted whether it is entirely accurate to describe it as a tenancy at all. It is limited by the usages

and customs of the particular denomination granting it. If no particular usages are shown, the common law gives the pewholder certain rights in the event of the sale of the house, or its being put to other uses. *Aylward* v. *O'Brien*, 160 Mass. 118, 127. In the case just cited, as in others, the court deemed it of consequence to point out that no usages of the denomination varying the common-law rule had been shown. Indeed, it seems to be generally conceded that, from the peculiar nature of the relation of the parties, the usage of the denomination controls. See *Livingston* v. *Church*, 45 N. J. Law 230. "The terms 'custom' and 'usage' are often used indifferently. 'Their true office is to interpret the otherwise indeterminate intention of parties, and to ascertain the nature and extent of their contract, arising not from express stipulation, but from mere implications and presumptions and acts of a doubtful and equivocal character.' 2 Gr. Ev., *s.* 251." *Jewell* v. *Railway*, 55 N. H. 84, 94.

He who buys a pew buys as much right only as the established and known customs of that denomination give. If there be a custom, it limits his right, in the absence of an express agreement inconsistent with such limitation. There was no such agreement here. On the contrary, his right is declared to be subject to the rights of the society; and this must include all that the customs of the denomination give to the society.

The limitation here claimed is not an unreasonable one. It differs in degree only from those frequently recognized. If the church edifice decays, the pewholder's right is gone. *Howe* v. *Stevens*, 47 Vt. 262. And so if the building is burned. The reason is that it is implied in the grant that his right continues only so long as the building exists and is fit for the contemplated use. So, too, if services are abandoned he cannot compel a renewal of them. There seems little difference in principle between the decay of the building, rendering the further holding of services impracticable, and the decadence of the society, rendering payment for conducting the services impossible of performance. In either event the situation is such that the substance of his right is gone. *Fassett* v. *Parish*, 19 Pick. 361. His right consists in the use—the occupancy of the pew during religious services. If this is lost by the decay of the building, the general common law is that the society may dispose of what is left without compensation to the pewholder. *Wentworth* v. *Parish*, 3 Pick. 344. There seems to be some sense in the Methodist practice: that a like course may be pursued as

to the still serviceable building in the event of the decay of the society. The underlying reason is the same in each instance.

It has been decided in this state that the society may move the church to a new location, if changes in population, or in the creed of the immediate neighborhood, make the change advisable. *Fisher v. Glover*, 4 N. H. 180. The change may render the right to occupy the pew valueless to its owner, yet he has no remedy. This conclusion is put upon the ground that, upon the whole, the method pursued is the reasonable way to conduct the affairs of the church, and that is all the pewholder can demand.

The question whether the usage must be known to the person sought to be charged with its limitations does not arise in this case. The general finding, that if the usage can bar the plaintiffs there is a verdict for the defendants, includes a finding of all the facts necessary to sustain such a result which the evidence warrants. The facts that one of the original pewholders was a trustee of the church and that the other was his daughter is some evidence to support a finding that they knew the general usage of the church. If as matter of law such knowledge was essential, it is to be presumed that the fact was found as one of those upon which the announced conclusion was based.

From what has already been said, it follows that it is unnecessary to consider whether the express contract to be governed by the "usages and discipline" of the church applies only to usages declared by the governing body of the denomination. If the stipulation is to be limited as claimed, the contract is silent upon the subject of usage in general, and the rights of the parties as affected thereby are determined by general legal principles.

*Judgment for the defendants.*

All concurred.