WILFRED MONCION ET AL. *v.* OLIVA BERTRAND ET AL.

May Term, 1923.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed January 16, 1925.

*Fraud—Representations as to Value Ordinarily Not Deemed Fraudulent—When Admissible as Part of Res Gestae— What May Be Shown to Establish Fraud—That Representations Extravagant and Unreasonable Does Not Preclude Recovery by One Victimized Thereby—Difference of Worth of Cattle Based Upon Production Capacity as Represented and as Actually Existed Admissible on Question of Damages—General Custom as to Additional Feeding— No Presumption That Non-resident Knows Local Custom —Evidence of Custom or Usage Only Admissible When Both Parties Cognizant Thereof and Agreement Made with Reference Thereto—False Representation Cannot Be Shown to Be True in Light of Facts and Circumstances of Which Party to Whom Representations Made Was Ignorant—Concealment May Constitute Fraud—Admissibility of Evidence That Good Husbandry Requires Additional Feeding—Exceptions to Exclusion of Evidence Unavailing, Unless All Evidence Included in Offer Improperly Excluded—What Constitutes Good Husbandry Question of Fact—Offer of Evidence Assuming Material Fact of Which There Was No Evidence Properly Rejected—Offered Evidence on Truth of Representation as to Feeding Capacity of Farm Held Properly Rejected Because Not Affording Proper Measure of Capacity—Offer of Proof Must Be Specific—Rule as to Adoption of One of Two Possible Constructions Freeing Representation from Fraud Not Applicable Where No Ambiguity or Uncertainty—Words in Representation to Be Given Natural and Ordinary Meaning, Unless Different Intent Shown—Necessity of Making Material Facts Known Which Bear on Meaning of Representations Made—When Honest Intent May Not Be Inferred.*

1.   Ordinarily representations relating to value are mere expressions

of opinion and not deemed fraudulent, but they may be other-
wise.

2.  In action of tort for fraud in sale of farm, statements made by
vendors to induce purchase, as to the price at which they could
sell property at any time in the future, if desired, were ad-
missible where part of the *res gestae* and so tending to lend
force and effect to principal statement.

3.  One who seeks to establish fraud in the sale of property may
show every circumstance in the condition or relation of the
parties, and every act and declaration of the parties charged
with the fraud, which bears such a relation to the transaction
under investigation as is calculated to show that charge of
fraud is or is not well founded.

4.  Although false representations may be so extravagant and unrea-
sonable that a sensible person would not believe them, such
fact does not necessarily preclude the person victimized from
recovery.

5.  In action of tort for fraud in sale of farm and certain personal
property, including cows, evidence as to the difference in worth
of such cows had they produced as represented over their
worth based upon their actual production, *held* admissible to
show damages resulting from false statements as to their actual
product.

6.  In such action, on claimed misrepresentations to effect that farm
would pasture a certain number of cows and produce a certain
quantity of hay, evidence offered by defendants as to general
custom in vicinity where farm was located, to feed grain and
fodder to dairy cows, unaccompanied by any offer or claim
that same was known to plaintiffs, or that circumstances were
such that they were chargeable with knowledge thereof, *held*
properly excluded.

7.  There is no presumption that a non-resident in a community is
cognizant with a usage or custom prevailing in a particular
trade or locality.

8.  When custom or usage is admissible at all, it is only on the ground
that the parties who made contract were both cognizant of it,
and made agreement with reference to it.

9.  In action of tort for fraud, defendant cannot show that representa-
tions, otherwise false, were true, if weighed in the light of facts
and circumstances known to him, but of which he knew, or

in the circumstances ought to have known, the other party was ignorant.

10. Concealment of that which is true may be equally as fraudulent as the assertion of that which is false.

11. In action of tort for fraud, on claimed misrepresentations to effect that farm would pasture certain number of cows and produce certain quantity of hay, defendants' offer to show that good husbandry required "addition of grain and green fodder, such as farmers usually feed." without limit as to quantity or source whence obtained, *held* properly rejected.

12. An exception to the exclusion of evidence included in a single offer, if otherwise admissible, is unavailing, unless all the evidence included in the offer was improperly excluded.

13. In an action of tort for fraud in sale of farm, what constitutes good husbandry is not a matter of law, but a question of fact.

14. In such action, on claimed misrepresentations to effect that farm would pasture certain number of cows and produce certain quantity of hay, defendants' offer to show that by feeding meal food and green food during summer "as good husbandry demands," the farm would care for the number of cattle represented, *held* properly rejected, the phrase "as good husbandry demands," being purely the assumption of a material fact, to show which there was no evidence in case.

15. In such action, defendants' offers to show truth of representations made by vendors as to feeding capacity of farm, by showing that farm would carry stock as represented if additional feeding of grain were made according to good husbandry, such offers being unlimited as to extent of additional feeding and not stating whether additional food could be derived from farm or otherwise, *held* properly rejected as not affording a proper measure of capacity.

16. An offer of proof must be specific enough to make its relevancy appear to the court.

17. Where a representation is fairly susceptible to two constructions, the one which will free it from imputation of fraud must be adopted, but such rule is inapplicable where statements complained of were certain, unambiguous, and not reasonably susceptible to a construction making them free from fraud.

18. In determining whether a representation is fraudulent or otherwise, the words used must be taken to have their natural and

ordinary meaning, unless intent that they be otherwise under-
stood be first shown.

19. Vendors, in making representations to purchasers of farm, as to
its feeding capacity, should also have made known to them,
as matter of good faith, that special feeding was necessary,
if, in the circumstances, good husbandry required such addi-.
tional feeding.

20. Honest intent of vendors of farm to be understood as using words
in a latent or qualified sense in making representations to
purchasers as to its feeding capacity, *held* not inferable from
certain extrinsic facts or from claimed statements of pur-
chasers.

ACTION OF TORT for fraud in sale of farm and personal
property. Plea, general issue. Trial by jury at the June Term,
1922, Caledonia County, *Moulton, J.*, presiding. Verdict and
judgment for plaintiffs. The defendants excepted. The opinion
states the case. *Affirmed.*

*M. G. Morse* and *W. A. Dutton* for the defendants.

*W. W. Reirden* and *Porter, Witters & Longmoore* for the
plaintiffs.

BUTLER, J. The complaint is in tort for misrepresentation
and fraud in the sale of the farm and certain personal property
consisting of cows and other live stock, hay, and farming tools
of defendant Bertrand to the plaintiff. Trial by jury. Verdict
for plaintiff. The case comes here on exceptions by defendants
to the admission and exclusion of evidence.

The representations, among others relied upon, and which
the evidence tended to show were false, were as follows:

*First.* That the farm and personal property were worth
$15,000.

*Second.* That the dairy was then producing cream to the
value of $200 a month.

*Third.* That the farm would pasture 25 cows and cut
sufficient hay to winter 25 head of cattle and a pair of horses.

Three exceptions, only, were briefed, and we consider them
in their order:

*First:* Subject to the objection and exception of defend-
ants, the plaintiff Wilfred, testified that the defendants, prior

to the sale of the farm, told him they could sell the farm for him at any time for $15,000, if he wanted to sell it. It is undisputed that the testimony objected to was embraced in and a part of a conversation relating to the sale of the property, wherein they told the plaintiff that the farm, stock, and personal property was worth $15,000. The statement with respect to value was received without objection, and the plaintiff's evidence unquestionably tended to show that it was understood by plaintiff as a statement of fact and was so intended by the defendants.

[1] Ordinarily representations relating to value are mere expressions of opinion and not deemed fraudulent. But they may be otherwise. *Belka* v. *Allen,* 82 Vt. 456, 74 Atl. 91; *Crompton* v. *Beedle,* 83 Vt. 298, 75 Atl. 331, 30 L. R. A. (N. S.) 748, Ann. Cas. 1912A, 399; *Arnold* v. *Somers,* 92 Vt. 513, 105 Atl. 260; *Harponola Co.* v. *Wilson,* 96 Vt. 427, 120 Atl. 895. The challenged evidence was but a mere expression of opinion impressing on the purchaser what they could do for him if he wanted to sell the property in the future. Standing alone, in no way did this tend to show fraud. *Hunt* v. *Lewis,* 87 Vt. 528, 90 Atl. 578, Ann. Cas. 1916C, 170; *Girard* v. *Jerry,* 95 Vt. 129, 123 Atl. 533.

[2] If this statement was admissible at all it is because it was a part of the *res gestae,* and so tended to lend force and effect to the principal statement. The rule is clearly and accurately pointed out in the recent cases in this State. *Goulette's Admr.* v. *Grand Trunk Ry. Co.,* 93 Vt. 266, 107 Atl. 118; *Comstock's Admr.* v. *Jacobs,* 89 Vt. 133, 94 Atl. 497, Ann. Cas. 1918A, 465.

That this assurance grew out of the transaction, was contemporaneous with it and tended to lend emphasis to it and make it more probable that the statement of value would be received and relied upon by the plaintiff as an assertion of fact rather than as a matter of opinion in the circumstances, can scarcely admit of doubt.

Bertrand was the owner of this farm, and the other defendants were real estate agents engaged in negotiating the sale of real estate, admittedly acquainted with land values in that vicinity. Plaintiff came from Canada to see this property with a view to purchase, at their instigation. They gave as a reason why Bertrand wanted to sell at this time, that he was divorced from his wife, and living alone. The assertion of the defendants

of what they could do if the plaintiff wanted to sell was, in the circumstances disclosed, well calculated to persuade a stranger that their assertion of value was a fact within their knowledge.

[3]   It is a well-established rule that a person who seeks to establish fraud in the sale of property may show every circumstance in the condition or relation of the parties, and every act and declaration of the parties charged with the fraud, which bears such a relation to the transaction under investigation as to be in its nature calculated to persuade the jury that the charge of fraud is or is not well founded.   14 A. & E. Enc. of L. 196; *Stauffer* v. *Young*, 39 Pa. 459.   See *Belka* v. *Allen*, 82 Vt. 456, 74 Atl. 915; *Harponola Co.* v. *Wilson*, 96 Vt. 427, 120 Atl. 895.

In *Bloomberry* v. *Pugh, etc.*, (R. I.), 121 Atl. 430, for fraud, in the sale of a truck by one Frey as agent for the defendant, the plaintiff, it was held, should be permitted to show the fraudulent representation of Frey which induced the plaintiff to enter into the contract, and the accompanying promises which Frey knew that neither he nor defendant had any intention of performing, although the accompanying representations were promissory in their nature.   This is well within the principle established by the authorities.   *Niles* v. *Danforth*, 97 Vt. 88, 122 Atl. 498.   See Greenleaf, on Ev. (15th ed.) 108; *Commonwealth et al.* v. *Chance*, 174 Mass. 245, 54 N. E. 551, 75 A. S. R. 306.

[4]   But the defendants contend that it was entirely improbable that the defendants would make a statement that they could at any time sell the property for $15,000 when they were ready to sell to plaintiff for $13,000; that the statements claimed were so extravagant and unreasonable that a sensible person would not believe them.   Granting that such was the fact, it would not necessarily preclude the person victimized from recovery.   *Nichols* v. *Land*, 93 Vt. 87, 106 Atl. 592; *Niles* v. *Danforth, supra; Harponola Co.* v. *Wilson, supra*.

[5]   *Second:*  This exception was to the testimony of George Nelson as bearing upon the question of damages.   He was asked the following questions: "Assuming that in March, 1921, there were 17 average cows there on the Marshall farm, how much more would they be worth if they produced $200 a month than they would be worth if they produced only $119.69 a month, on the average, from October, 1920, to March, 1921?"   To which

22

witness answered, "They would be worth $10 or $15 or $20 a cow more if they could produce that, than they would if they produced the smaller amount." The question relates to the difference in value of the same class of cows during the same period of time at the same place ascertained solely by their product. The objection was on the ground that there was no proper foundation laid for such an estimate. The plaintiff's testimony tended to show that defendants in the sale of the farm, represented to the plaintiff that they were getting in cream checks of $200 a month, while as a matter of fact they were getting only $119.69 a month as an average from October to March, and that about 17 cows were then producing. Thus the foundation was laid for attempting to show the damages suffered from overstating the value of the product. The difference in value of cows as affected solely by the differences in value of their product was clearly permissible as tending to show the damages resulting from such false statements as to the actual product of cows sold. This objection was properly overruled.

[6]   *Third:*   This question relates to the exclusion of evidence offered by defendants. The plaintiff claimed, and his evidence tended to show, that defendants told him that the "farm would pasture 25 cows," and that it would "cut enough hay to winter 25 head of cattle and a team of horses," and that the property would have been worth $2,500 more if it had been as represented in these respects.

In this connection one of the plaintiffs' witnesses had testified that the pasture, in fact, would not carry over 15 cows without additional feeding of green fodder and grain, and that it would probably winter 18 cows without feeding meal and grain.

In answer to this, defendants offered to show by witness Russell that "it is the general custom among farmers in that vicinity and beyond as far as the witness has any acquaintance, to feed grain to milch cows; that it is good husbandry to do that, and that it is the general custom to feed green fodder in the summer to dairy cows, and that it is good husbandry * * * and the fair understanding of a farm that was said to carry a given number of cows, would be under those conditions, with a suitable addition of grain and green fodder such as farmers usually feed, * *" and "that where this grain and green fodder is fed that it materially increases the amount of stock

that a farm would carry and that that would be considered as accompanying the statement that a farm would carry a certain number of cows that these conditions would be implied in such a statement.''

So far as this offer related to custom, it was in effect to show the general custom in the vicinity where the farm was located, unaccompanied by any offer or claim, that the same was known to the plaintiff, or that the circumstances were such that he was chargeable with knowledge thereof. In this situation it was not error to exclude the evidence.

[7, 8]   There is no presumption that a non-resident in a community is cognizant with a usage or custom prevailing in a particular trade or locality. *Miller* v. *Wiggens,* 227 Pa. 564, 76 Atl. 711, 19 Ann. Cas. 942, and note. When custom or usage is admissible, at all, it is only on the ground that the parties who made the contract were both cognizant of it, and made the agreement with reference to it. *Chateaugay Iron Co.* v. *Blake,* 144 U. S. 476, 36 L. ed. 510, 12 Sup. Ct. 731. See *Huntington* v. *Ramsden,* 77 N. H. 375, 92 Atl. 336, Ann. Cas. 1915C, 949. Such in effect are our own cases. See *Russell Admr.* v. *Ferguson,* 77 Vt. 433, 60 Atl. 802; *Linsley* v. *Lovely,* 26 Vt. 123; *Stevens* v. *Smith,* 21 Vt. 90; *Copper Co.* v. *Copper Mining Co.,* 33 Vt. 92; *Goodnow* v. *Parsons,* 36 Vt. 47; *Chamberlin* v. *Rankin,* 49 Vt. 133.

[9, 10]   Nor in the circumstances could such a custom be considered as attending the statement by implication, for no evidence had been introduced warranting such inference. While great latitude in the range of evidence is allowed in actions of fraud, and the presumption of innocence is to be indulged in favor of the party charged therewith, we are aware of no case that goes to the extent of permitting such party to show that representations, otherwise false, were true, if weighed in the light of facts and circumstances known to him, but of which he knew or in circumstances ought to have known, the other party was ignorant. Concealment of that which is true may be equally fraudulent as the assertion of that which is false. *Graham* v. *Stiles,* 38 Vt. 578; *Paddock* v. *Strobridge,* 29 Vt. 470; *Howard* v. *Gould,* 28 Vt. 523, 67 A. D. 728; *Newell Brothers* v. *Hanson,* 97 Vt. 297, 304, 123 Atl. 208.

[11]   So far as the offer relates to good husbandry in the feeding of milch cows by the ''addition of grain and green

fodder, such as farmers usually feed," without limit as to quantity or source whence obtained, it is equally untenable. The representations complained of were that the farm would pasture 25 cows and cut sufficient hay to winter 25 head of cattle and a pair of horses. To permit defendant to show that he spoke with reference to the addition of grain or green fodder obtained elsewhere, would be error, for an offer to show custom and good husbandry, susceptible of that version, would be improper.

[12]   Moreover, if this offer is to be construed as including both evidence of custom and the demands of good husbandry, the ruling must stand, for an exception to the exclusion of evidence included in a single offer, if otherwise admissible, is unavailing, unless all the evidence included in the offer was improperly excluded. *Crahan* v. *Town of Chittenden,* 82 Vt. 411, 74 Atl. 86; *Dubois* v. *Roby,* 84 Vt. 465, 80 Atl. 150; *Knight* v. *Smythe,* 57 Vt. 529.

[13, 14]   But the defendant, as the transcript shows, made a further offer which did not include the element of custom to show "that by the feeding of such meal food and green food during the summer as good husbandry demands, that the carrying capacity of this farm would be increased by 10 cows, in other words, a farm that will carry 16 cows as has been indicated by the plaintiff's testimony would carry 25 cows (that is, of itself without any feed and without using green stuff), will carry 25 if these methods are pursued according to good husbandry." This offer was excluded under exceptions by defendant.

What constituted "good husbandry" cannot be ruled as a matter of law. It is a question of fact to be found, if at all, on evidence. When this offer was made, no evidence had been introduced tending to show of what "good husbandry" consists, in connection with such matters as are involved in this case, or claimed by defendant.

The phrase in the offer "as good husbandry demands" was purely the assumption of a material fact, tending to show which there had been no testimony in the case. By reason of this assumption, if for no other reason, the offer was properly excluded. *Baker & Son* v. *Sherman,* 71 Vt. 439, 46 Atl. 57; *Coolidge* v. *Ayers,* 77 Vt. 448, 61 Atl. 40; *People* v. *Mather,* 4 Wend. (N. Y.) 230, 21 A. D. 122; 1 Thompson on Trials, § 369.

[15] Moreover, the offers, whether taken as a whole or separately, were properly ruled, for the statements complained of relate solely to the capacity of the pasture as measured by cows, and of the farm to cut hay as measured by cattle and horses. They must be tested by the consumption reasonably to be expected by such cows, cattle, and horses as the plaintiffs might reasonably be expected to keep under ordinary conditions, climatic and otherwise, properly fed from its product. These offers were unlimited as to the extent of such additional feeding required and comprehend the feeding of meal or green stuff, whether derived from the farm or other sources. That the Court so understood the offers is shown by the record. It could not be tested by large cattle or small, heavy feeders or light feeders, nor by the products of other farms or grain or green fodder from other sources. Such measure of capacity would be no measure at all.

[16] Nor was there anything in the offers to show that defendants understood and intended plaintiff to understand at the time that such additional feeding was required to constitute good husbandry. To be available, the offer must be specific enough to make its relevancy appear to the court. *Jericho* v. *Huntington,* 79 Vt. 329, 65 Atl. 87.

[17] True it is that, if a representation is fairly susceptible to two constructions, the one which will free it from imputation of fraud must be adopted. *Henderson* v. *Gilliland,* 187 Ala. 268, 65 So. 793; *McKennan* v. *Mickelberry,* 242 Ill. 117, 89 N. E. -717; *Gormley* v. *Dangel,* 214 Mass. 5, 100 N. E. 1084. See 12 R. C. L. 426. And it is the duty of the court to give the representation a construction, if reasonable, that comports with honest motive, but here the statements complained of were certain, unambiguous, and not susceptible to a construction as having reference to husbandry requiring the additional use of green food and grain, nor to products other than such as were derived from the farm

[18-20] To the words used must be attributed the natural and ordinary meaning, unless intent that they be otherwise understood be first shown. If, in the circumstances, good husbandry required special feeding, that fact should have been made known to plaintiffs as a matter of good faith. Honest intent to be understood as using the words in a latent qualified sense cannot be inferred from such extrinsic facts, nor can it be

inferred from the statements which defendants are alleged to have been made, and which their testimony tended to establish.

*Judgment affirmed.*

TAYLOR, J. (dissenting). I am unable to approve of the treatment of the third exception, or to concur in the result reached. I shall attempt no more than to indicate generally the reasons for my dissent.

The opinion recognizes the true rule of construction to be applied to the representations complained of, but fails to apply it, with the result that the defendants are denied the benefit of the rule. In my judgment no valid reason is assigned for excluding the offered evidence. In effect, the offer was to show that with proper management the farm would do as represented, or, in other words, that the particular representation was true. The proposition that there was a shortage in the offer so far as it related to the custom among farmers in respect to feeding milch cows is not tenable, nor is it supported by the cases cited. The doctrine invoked applies to matters of contract, where manifestly knowledge of the custom, or its equivalent, must be shown in order to find that the parties made the agreement with reference to it. But where, as in the case at bar, the custom bears upon the truth of a representation, or upon the question of *scienter*, it is unimportant whether the plaintiff knew or did not know of the custom. It would seem clear that plaintiff's ignorance of a custom among farmers, which if followed would justify the representation, would not prevent the defendants showing what they offered to show as bearing upon the truth of their statement, as well as their good faith in making it.

The opinion undertakes to dispose of that part of the offer relating to good husbandry on the ground that when it was made no evidence had been introduced tending to show what would constitute good husbandry, and so that the offer was faulty in that it assumed a material fact not in evidence. The opinion distorts the offer by treating portions of it separately. Taken as a whole, in legal effect the offer was to show that it was good husbandry to feed the cows grain and green fodder, and that so managed the carrying capacity of the farm would be as represented. It seems to me evident that the exclusion of the offer was reversible error. The assumption that the grain and green fodder

referred to in the offer were not to be produced upon the farm is unwarranted; but, if indulged, the offered evidence would still be admissible. The defendants would be entitled to show what the farm would do when conducted in a husbandlike manner; and, if good husbandry called for the purchase of grain, for example, to feed the cows, manifestly the defendants would be entitled to show that fact. The doctrine of fraudulent concealment is referred to, but I fail to discover its applicability to the case in hand.

POWERS. J., concurs in this dissent.